# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT WILLIAM SHERWOOD and PAMELA LOUISE SHERWOOD, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation d/b/a The Burlington Northern and Santa Fe Railway Company, and JOHN DOES I through X,<br><br>Defendants. | Case No.: 1:16-cv-00008-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO EXCLUDE (DKT. 58) AND DEFENDANT'S MOTION TO STRIKE (DKT. 66)** |

Pending are Defendant's Motion to Exclude Untimely and Late Disclosed Witnesses and Medical Records (Dkt. 58) and Defendant's Motion to Strike Supplemental Reports of Richard Greear and Alan Blackwell (Dkt. 66). Having carefully considered the record, heard oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Robert Sherwood alleges he was injured when thrown from his bicycle after his wheel lodged in a gap between two concrete planks at a railroad crossing used and maintained by Defendant BNSF Railway Company ("BNSF") near Sandpoint, Idaho. Compl. ¶¶ 23, 24, 49–61, 65–70 (Dkt. 1). BNSF admits that Mr. Sherwood was involved in a bicycle crash on or near the crossing, but denies various other allegations, including that it is liable for Mr. Sherwood's injuries. *See generally* Ans. (Dkt. 5). The accident occurred on July 14, 2014. Compl. ¶ 49 (Dkt. 1); Ans. ¶ 60 (Dkt. 5). Mr. Sherwood sued on January 6, 2016, alleging negligence. Compl. ¶¶

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO EXCLUDE AND DEFENDANT'S MOTION TO STRIKE – 1**

90–96 (Dkt. 1).

Ten motions are presently pending in this case. This decision resolves BNSF's pending motions to exclude certain witnesses and medical records and to strike supplemental reports by two of the Sherwoods' experts.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In deciding whether a late disclosure is substantially justified or harmless, the court considers four factors: (1) prejudice or surprise to the non-offending party; (2) ability of the non-offending party to cure any prejudice; (3) likelihood of disrupting trial; and (4) bad faith or willfulness of the party failing to timely disclose. *Gibson v. Credit Suisse AG*, 2016 WL 81224 at *4 (D. Idaho, Jan. 7, 2016) (citing *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (unpublished)). It is the offending party's burden to prove that the untimely disclosure was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Separately, Federal Rule of Civil Procedure 26(a)(2)(B) requires a party to disclose a written report regarding expert witness testimony including, among other things, "a complete statement of all opinions the [expert] witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Such disclosures are required "at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). Rule 26(e) requires supplementation or correction "if the party learns that in some material respect the disclosure … is incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in writing." This is a continuing duty. FED. R. CIV. P. 26(a)(2)(E). Failure to comply with the disclosure requirements applicable to expert witnesses' reports can result in exclusion of the report or other sanctions under Rule 37(c)(1).

## DISCUSSION

**A. BNSF's Motion to Exclude Is Granted in Part and Denied in Part.**

BNSF seeks to exclude certain of the Sherwoods' documents and witnesses as not timely disclosed (Dkt. 58). According to BNSF, the Sherwoods' initial disclosures included documents identifying numerous health care providers, some of whom were not properly disclosed. Mem. ISO Mot. to Exclude 2 (Dkt. 58-1). BNSF requested supplementation multiple times between December 2016 and April 2017. *Id.* On August 7, 2017, the date of the discovery deadline,[1] the Sherwoods submitted a supplemental Rule 26 disclosure providing certain witness names.[2] *Id.*; *see also* Order (Dkt. 25). The Sherwoods submitted additional supplemental disclosures on September 28, 2017 and October 6, 2017.

BNSF contends that the information in the supplemental disclosures was timely requested and available to the Sherwoods long before the discovery deadline. Mem. ISO Mot. to Exclude 2 (Dkt. 58-1). Moreover, BNSF argues that it is prejudiced because it has had no opportunity to depose any witnesses identified for the first time in the Sherwoods' untimely disclosures. *Id.* Nor could it conduct any other discovery regarding the disclosures. *Id.* Further, BNSF's experts

---

[1] The August 7, 2017 discovery deadline was extended to August 29, 2017 (Dkt. 35) by joint motion and for the sole purpose of conducting certain specified depositions (Dkt. 34). That extension has no bearing on the timeliness of the disclosures at issue in this decision.

[2] The Sherwoods had previously provided other supplemental disclosures, which are not at issue here.

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO EXCLUDE AND DEFENDANT'S MOTION TO STRIKE – 3**

lacked the information within the untimely disclosures when preparing their reports. Reply ISO Mot. to Exclude 8 (Dkt. 106).

The Sherwoods argue that BNSF's motion is overly broad and that BNSF failed to comply with the Local Rules related to discovery disputes. Further, they contend that certain of their untimely disclosures were substantially justified or harmless. Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 1–2 (Dkt. 91). The Sherwoods also withdraw one witness, Mr. Scharbarth, thereby mooting BNSF's motion as to that witness. *Id.* at 2 n.2.

The Sherwoods' challenge that the instant motion is overly broad has merit. They point out that the conclusion of BNSF's brief in support of its motion seeks to prohibit the Sherwoods "from eliciting testimony, seeking damages, or otherwise relying upon or discussing any information from these untimely and late disclosed witnesses and documents – and any others that may be disclosed between now and time of trial." Mem. ISO Mot. to Exclude 6 (Dkt. 58-1). On its face, the relief BNSF seeks is overly broad. However, BNSF's brief does identify certain witnesses and documents. As to such identified witnesses and documents, the requested relief is not overbroad. Specifically, BNSF identifies witnesses Diane Frost, PhD, a clinical psychologist, Dr. Rita Romero, a psychologist, and Mr. Sherwood's friend Mr. Robert Scharbarth. *Id.* at 5. BNSF also refers to photographs of Mr. Sherwood's bicycle taken in September 2017 as well as medical records from treatment Mr. Sherwood received in February 2015, approximately 18 months prior to the disclosure. *Id.* These particulars are sufficiently definite to put the Sherwoods on notice of the relief sought. But, correspondingly, the Court will consider only those witnesses and documents actually mentioned in BNSF's motion or opening brief as those implicated by the scope of the motion. Hence, to the extent BNSF seeks to exclude other witnesses or documents, the motion is denied. This result is necessary because the Sherwoods have not had adequate

notice and an opportunity to be heard on whether any additional allegedly untimely disclosures may have been substantially justified or harmless.

The Sherwoods also contend that BNSF failed to comply with Local Rule 37.1 by failing to meet and confer prior to filing its motion and Local Rule 37.2 by failing to include in its filings those discovery requests related to its motion. Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 2 (Dkt. 91). The parties did not meet and confer with respect to BNSF's motion prior to its filing. BNSF contends that because its motion is brought under Federal Rules of Civil Procedure 26 and 37(c), rather than 37(a), there was no requirement to meet and confer prior to filing. Reply ISO Mot. to Exclude 4 (Dkt. 106). The Court agrees. The meet and confer requirement arises from the text of Rule 37(a), which deals with motions to compel disclosure or discovery. Rule 37(c), regarding excluding evidence for failure to disclose as required by Rule 26, contains no meet and confer requirement. Thus, the fact that BNSF did not attempt to meet and confer prior to filing its motion does not necessitate denying the motion.

Nor does BNSF's alleged violation of Local Rule 37.2 hold any significance here. That Rule requires a movant to "provide verbatim each disputed interrogatory, request, answer, response, or objection that underlies" a discovery motion brought under Rules 26 and 37. BNSF did not include such disputed discovery requests with its initial memorandum. BNSF asserts it "rectified that oversight" by providing such documents with its reply memorandum, but the discovery request it filed deals with the Sherwoods' finances and not with any witnesses or documents BNSF identifies in its initial memorandum. Reply ISO Mot. to Exclude 7 n.2 (Dkt. 106); Decl. of Andrew Mitchell ¶ 3 (Dkt. 106-1); Decl. of Andrew Mitchell Ex. 2 (Dkt. 106-3). Regardless, and as previously indicated, the Court will only consider those witnesses and documents expressly mentioned in the initial memorandum. Such a ruling adequately addresses

BNSF's failure to file the disputed discovery requests because the purpose of the Local Rule is to ensure that the Court and the parties have a "clear picture of the specific discovery in dispute." Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 12 (Dkt. 91) (citing *In re: Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, No. 09-md-2059, 2009 WL 10677928 at *1 (D. Minn. Aug. 19, 2009)). Limiting BNSF's motion to the witnesses and documents expressly mentioned in BNSF's initial memorandum ensures that such a "clear picture" exists.

Finally, the Sherwoods contend that any untimely disclosures were substantially justified or harmless. *Id.* at 14–19. They argue separately for each witness and set of documents. The Court will consider each in turn.

**1. Dr. Diane Frost Is Excluded As a Witness.**

With respect to Dr. Diane Frost, the Sherwoods contend that she first saw Mr. Sherwood on April 26, 2017 but was not disclosed as a witness until August 7, 2017. *Id.* at 14–15. They explain that Mr. Sherwood forgot to notify counsel because of his memory problems. Counsel learned in late July 2017 that Mr. Sherwood was seeing Dr. Frost and promptly interviewed her and disclosed her as a witness. The Sherwoods suggest there is no reason to believe BNSF would have deposed Dr. Frost even had she been timely disclosed. Apparently acknowledging the untimely disclosure, they state they would not object to BNSF taking Dr. Frost's deposition now.

It is neither practical nor realistic for a defendant in a personal injury case such as this to speculate about care providers and construct a case strategy upon such possibilities. The universe of possible care providers is a large one, and without the disclosure of such providers and the means of obtaining discovery about the details of the care they provided to a plaintiff, it would be impossible for a defendant to evaluate the significance of such care as it might pertain to either liability or damage claims. The prejudice that stems from a late disclosure is almost

inescapable and, here, BNSF was denied the opportunity to engage in discovery with respect to Dr. Frost as a result of the Sherwoods' untimely disclosure. Indeed, BNSF argues that it would be prejudiced if Dr. Frost were allowed as a witness because it had no opportunity to depose Mr. Sherwood about Dr. Frost and because its experts' reports and rebuttal reports were not based on Dr. Frost's records. Reply ISO Mot. to Exclude 8–9 (Dkt. 106). Moreover, such prejudice cannot easily be cured at this point, as discovery has closed and experts have rendered their opinions. The untimely disclosure of Dr. Frost significantly impacts other discovery, particularly including the information given to BNSF's experts to enable them to prepare appropriate reports. Nor was the delay substantially justified on the grounds that Mr. Sherwood simply forgot, for five months, to tell counsel about Dr. Frost treating him. It simply is implausible that Mr. Sherwood would forget that he was being seen by Dr. Frost, or that his counsel would not be inquiring of him about his providers, particularly when supplemental disclosures were requested, and provided, on multiple occasions. The Court is not persuaded that the Sherwoods' late disclosure was substantially justified or harmless. Accordingly, Dr. Frost will be excluded as a witness.

    **2. Dr. Romero's Late Disclosed Documents Are Excluded.**

The Sherwoods disclosed Dr. Romero as a witness on September 15, 2016; medical records and invoices she prepared were timely disclosed in September 2016 and May 2017. *Id.* at 15–16. At issue are an additional 38 pages of records and a one-page bill disclosed on September 28, 2017. The Sherwoods say that the supplemented records "contain the same information as the previously disclosed records, but are merely in the form of expanded checklists, rather than concise summaries." *Id.* at 16. They suggest that "[v]irtually no new information was provided on September 28 that was not already available to BNSF many months earlier." *Id.*

BNSF, however, contends that the untimely supplementation included records for visits made after the prior disclosures, which necessarily included new information. Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 9–10 (Dkt. 91). Moreover, BNSF indicates that all but one of the new visits were during or before June 2017, which therefore could have been disclosed well before the August 2017 discovery deadline.

The Court has reviewed the Sherwoods' relevant disclosures from May 11, 2017,[3] and from September 28, 2017. The May disclosures include a one-page letter summarizing Dr. Romero's diagnosis and prognosis of Mr. Sherwood and documenting her treatment of him from November 13, 2014 through April 25, 2017. Decl. Michael Lutz Ex. 20 (Dkt. 91-20). Also included are invoices for treatments from September 15, 2016 through April 20, 2017. Decl. Michael Lutz Ex. 21 (Dkt. 91-21). The September disclosures include actual medical records, showing "Patient Progress Notes" from sessions between September 2016 and June 2017 – including sessions dated April 26, 2017, May 10, 2017, May 16, 2017, June 8, 2017, and June 29, 2017 that were not previously disclosed. Decl. Michael Lutz Exs. 22 (Dkt. 91-22), 23 (Dkt. 91-23). Thus, the September disclosures were different in substantive degree from the May disclosures, in that they included actual medical records of treatments from September 2016 through June 2017 and evidenced for the first time treatments after April 20, 2017. The Sherwoods have not shown that their untimely disclosure of these records was either substantially justified or harmless. To the contrary, the prejudice to BNSF resulting from the late disclosure of these medical records is evident. Thus, per Federal Rule of Civil Procedure

---

[3] The documents include a letter dated April 25, 2017 and invoices through April 20, 2017, but the filings in the record before the Court do not indicate when they were disclosed to BNSF. The Sherwoods assert the disclosures were made May 11, 2017. Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 16 (Dkt. 91); Decl. Michael Lutz Exs. 20 (Dkt. 91-20), 21 (Dkt. 91-21).

37(c)(1), the Sherwoods' supplemental disclosure dated September 28, 2017 regarding Dr. Rita Romero is excluded.[4]

### 3. The Late Disclosed Bicycle Photographs Are Not Excluded.

BNSF contends that the Sherwoods produced photographs of Mr. Sherwood's bicycle on September 28, 2017 that were untimely. Mem. ISO Mot. to Exclude 5 (Dkt. 58-1). BNSF acknowledges the photos were not taken until September 27, 2017, but it asserts the bicycle "has been in possession of plaintiffs since the date of the accident and could have been photographed at any time." *Id.* at 5, n.1.

The Sherwoods counter that the untimely disclosure is substantially justified because the photographs were taken "to rebut a mistaken statement by BNSF's cycling expert … during his August 11, 2017 deposition." Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 17 (Dkt. 91). In his report, the BNSF expert alleged that the cyclecomputer affixed to Mr. Sherwood's bicycle had had its memory cleared. *Id.* During his deposition, the expert was asked if it were possible that he accidentally cleared the cyclecomputer's memory while he was inspecting it. *Id.* He denied the possibility, claiming he knew which button did what because "it is labeled on the computer." *Id.*; Arnold Dep. 158:7–10 (Dkt. 43-5). The Sherwoods contend the new photographs were created to impeach the testimony of BNSF's expert. Because that expert did not give his deposition until after the discovery deadline, there was no way for the Sherwoods to anticipate the need for such photographs. Further, the Sherwoods point out that BNSF is not harmed because BNSF has inspected the bicycle twice itself and because the bicycle, with the

---

[4] BNSF has not requested that Dr. Romero be excluded entirely as a witness. With respect to Dr. Romero, this decision addresses only those documents in the Sherwoods' supplemental disclosure dated September 28, 2017.

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO EXCLUDE AND DEFENDANT'S MOTION TO STRIKE – 9**

cyclecomputer attached, will be an exhibit at trial. Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 18 (Dkt. 91).

BNSF argues it will be harmed if the photographs are not excluded, as "presumably Plaintiffs' own experts, including Charles Greear, will now rely on these photographs, and BNSF has not had the chance to depose Mr. Greear on the same." Reply ISO Mot. to Exclude 10–11 (Dkt. 106).

The Sherwoods argue that the photographs are to be used to impeach BNSF's expert. No other purpose is stated in the Sherwoods' briefing. Accordingly, the photographs were not required to be disclosed at all, under Rule 26's protection of documents used solely for impeachment. FED. R. CIV. P. 26(a)(1)(A)(ii), (a)(3)(A); *see also Murdick v. Catalina Mktg. Corp.*, 496 F.Supp.2d 1337, 1345 (M.D. Fla., July 11, 2007). Therefore, they are not subject to a Rule 37(c)(1) motion to exclude for failure to disclose or supplement. BNSF's motion is denied with respect to the cyclecomputer photographs. Further, there is no persuasive evidence that BNSF would be prejudiced, upon these particular facts, regardless. Even if the Sherwoods failed to timely disclose the photographs, such failure was both substantially justified and harmless.

4. **Some of the Sharp Medical Facility Records Are Excluded.**

BNSF seeks to exclude medical records from treatment Mr. Sherwood received in February 2015 but that were not disclosed until October 6, 2017. Mem. ISO Mot. to Exclude 5 (Dkt. 58-1). The Sherwoods refer to these as the "Sharp Medical Records" as they come from Sharp Memorial Hospital and Sharp Healthcare in San Diego, California. The Sherwoods claim that six of the 14 pages at issue were in their initial disclosures on April 4, 2016. Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 18 (Dkt. 91). Indeed, pages three through eight of the October 2017 supplemental disclosure (with Bates numbers SHERWOOD MR SHARP 000003 through

000008) correspond with pages two through seven of the Sherwoods' initial disclosures (with Bates numbers SHERWOOD GROTH MR 000022 through 000027). *Compare* Decl. Michael Lutz Ex. 30 (Dkt. 91-30) (the medical records disclosed in September 2017) *with* Decl. Michael Lutz Ex. 32 (Dkt. 91-32) (the medical records disclosed in April 2016). Because these pages were timely disclosed in a prior production, the motion to exclude is denied as to these records.

The remaining eight pages include a visit sheet detailing basic information about Mr. Sherwood such as contact and insurance information, plus details about a visit from February 9–11, 2015, noting the attending doctor and the times of admission and discharge. (Dkt. 91-30 p. 2.) Later, there is an "Outpatient Rehabilitation Services Adaptive Driving Program Treatment Order" dated December 22, 2014, *id.* at 9, followed by an "Adaptive Driving Program Health History Information" form of the same date. *Id.* at 10–11. Finally, there is a four-page medical record from August 15, 2014 of unknown significance. *Id.* at 12–15. All of these records are from Sharp Memorial Hospital.

With respect to these eight pages, the Sherwoods argue that the untimely disclosure was harmless because the pages provide no information concerning Mr. Sherwood's medical condition that is not already reflected in his records from other providers. Plfs.' Mem. in Opp'n to BNSF's Mot. to Exclude 19 (Dkt. 91). They do not explain the reason for the delay in disclosing the documents.

The Court is not persuaded that the untimely disclosure of these eight pages was substantially justified or harmless. Dr. Franklin Livingstone, one of BNSF's retained experts, relied in part upon the Sharp Medical Records that had been disclosed as of the date of his report, May 6, 2017. Decl. Michael Lutz Ex. 33 (Dkt. 91-33). The report expressly assesses the significance of Mr. Sherwood's February 2015 visit to Sharp Healthcare, *id.* at 3, as well as the

significance of other of Mr. Sherwood's healthcare visits. Despite the Sherwoods' suggestion that the new pages did not include anything not already known to Dr. Livingstone, the Court is not prepared to assume that Dr. Livingstone's report would be the same even if he had reviewed the additional records. Because the Sherwoods did not timely disclose pages 2 and 9–15 of the Sharp Medical Records (Dkt. 91-30) or show that the delay was substantially justified or harmless, BNSF's motion is granted as to those pages and such pages will be excluded.

5. **No Other Witnesses or Documents Are Excluded by this Decision.**

In its reply brief, BNSF attempts to clarify its motion to exclude by describing a much broader list of specific witnesses and documents than was contained in its original motion and memorandum. BNSF asserts that the Sherwoods have not disclosed records, including bills or receipts, for 44 entities and individuals who allegedly provided medical or caretaking services for Mr. Sherwood. Reply ISO Mot. to Exclude 5–6 (Dkt. 106). It also seeks to exclude undisclosed financial records, alleging failure to furnish appropriate responses to BNSF's Requests for Production Nos. 22 and 23. *Id.* at 7. Here again, BNSF's motion and initial memorandum did not specifically put the Sherwoods on notice that they could argue against the relief sought.[5] Accordingly, BNSF's motion is denied as to such witnesses and documents.

Additionally, BNSF filed a supplemental declaration of counsel on January 16, 2018 seeking to enlarge the scope of its motion to exclude by identifying additional late-disclosed witnesses and documents. Suppl. Decl. Andrew Mitchell (Dkt. 120). Specifically, BNSF seeks to exclude (1) two demonstrative videos the Sherwoods' expert Alan Blackwell disclosed on

---

[5] This is further exemplified, at least with respect to the financial records BNSF now seeks to exclude, by the fact that the motion title was "BNSF Railway Company's Motion to Exclude Re: Untimely and Late Disclosed Witnesses and Medical Records." (Dkt. 58.) Nothing in the motion or supporting filings, other than in the reply memorandum, suggests that BNSF sought to exclude financial records via the motion.

January 2, 2018; (2) two witnesses disclosed, apparently for the first time, on January 11, 2018; and (3) 36 pages of certified weather data for 2014 from the National Oceanic and Atmospheric Administration and related agencies. *Id.* ¶ 4; *see also* Plfs' Seventh Suppl. F.R.C.P. 26 Disclosures (Dkt. 120-1 pp. 3–6). No briefing was submitted along with or in response to BNSF's supplemental declaration. Although the declaration was mentioned during the hearing on these motions, neither party spent much time addressing the declaration's contents. Accordingly, the Court cannot reasonably evaluate whether the disclosures referenced in the supplemental declaration, if untimely, were substantially justified or harmless.[6] The Court therefore declines to enlarge BNSF's motion by considering the requests raised in its supplemental declaration.

In sum, BNSF is granted relief in these respects: (1) exclusion of Dr. Diane Frost as a witness; (2) exclusion of those portions of the Sherwoods' supplemental disclosure dated September 28, 2017 regarding Dr. Rita Romero; and (3) exclusion of pages 2 and 9–15 of the Sharp Medical Records (Dkt. 91-30) included in the Sherwoods' supplemental disclosure dated October 6, 2017. The motion is otherwise denied.

**B.  BNSF's Motion to Strike Is Denied.**

BNSF seeks an order striking reports by two of the Sherwoods' expert witnesses. (Dkt. 66.) It alleges that the supplemental reports of experts Charles Greear and Alan Blackwell were produced after the deadlines for both initial and rebuttal reports, and that it was therefore

---

[6] The two witnesses identified in Plaintiffs' Seventh Supplemental F.R.C.P. 26 Disclosures, attached to BNSF's supplemental declaration, are referred to as Mr. Sherwood's "new pain management doctor" and "new part time caregiver." (Dkt. 120-1 p. 4.) Depending on how "new" these medical providers were at the time, it is conceivable that their disclosure after the discovery deadline was substantially justified. But, lacking any information or context either way, the Court declines to consider this issue.

prejudiced in its discovery process and preparation of its own expert reports and rebuttal reports. *Id.* at 2. The Sherwoods' rebuttal expert witness disclosures were due July 21, 2017. (Dkts. 32, 33.) Expert Alan Blackwell submitted a supplemental report on August 15, 2017. Decl. of Andrew Mitchell Ex. A (Dkt. 68-1). Expert Charles Greear submitted supplemental reports on August 7, 2017 and September 5, 2017. Decl. of Andrew Mitchell Ex. B (Dkts. 68-2 through 68-6.) Each expert's rebuttal reports will be considered in turn.

1. **Expert Alan Blackwell's Supplemental Report.**

BNSF contends that Mr. Blackwell's August 15, 2017 supplemental report was based on materials that were all available to him prior to the April 3, 2017 expert disclosure date. Mem. ISO Mot. to Strike 8 (Dkt. 66-1). BNSF also contends the report disingenuously seeks to strengthen opinions offered in his original report, rather than rebutting any testimony offered by BNSF experts. *Id.* As such, BNSF argues that the report does not qualify as a "supplemental" report for purposes of Federal Rule of Civil Procedure 26(e).

The Sherwoods counter that Mr. Blackwell's supplemental report was necessitated by BNSF's own late production, on July 21 and August 3, 2017, of 14 photographs that it had withheld for three years. Plfs.' Mem. in Opp'n to BNSF's Mot. to Strike 5 (Dkt. 96). The fact of the withheld photographs, the Sherwoods say, reinforces Mr. Blackwell's earlier-stated opinion that BNSF destroyed and concealed evidence in this case. *Id.* at 5–6. Moreover, Mr. Blackwell's supplemental report analyzes the significance of the contents of those photographs, opining that the photographs confirm his prior opinion that there was a physical separation between the concrete planks at the railroad crossing where Mr. Sherwood alleges he was injured. *Id.* at 6. Finally, Mr. Blackwell's supplemental report includes a list of cases where BNSF has been

sanctioned or criticized for hiding or destroying evidence – a list that BNSF itself had requested from Mr. Blackwell during his deposition on July 6, 2017. *Id.* at 6–7.

The Sherwoods additionally argue that, even if Mr. Blackwell's supplemental report was untimely, any delay was harmless under Federal Rule of Civil Procedure 37(c)(1). *Id.* at 7. They state that Mr. Blackwell's July 6, 2017 deposition was continued by stipulation, which stipulation this Court granted. (Dkts. 34, 35.) The deposition was to resume August 24, 2017, but BNSF elected to cancel the deposition via an August 17, 2017 email. Plfs.' Mem. in Opp'n to BNSF's Mot. to Strike 7 (Dkt. 96). Mr. Blackwell's supplemental report was disclosed August 15, 2017, before both the scheduled deposition date and BNSF's cancelation thereof. Moreover, the Sherwoods expressly offered to hold the continued deposition so that BNSF could inquire about the supplemental report, but BNSF declined. *Id.* The Sherwoods argue that BNSF's decision to cancel the pending deposition shows that BNSF was not harmed by the timing of the disclosure. *Id.*

BNSF admits it did not disclose until July 21, 2017 the withheld photographs Mr. Blackwell reviewed in preparing his supplemental report. Reply ISO Mot. to Strike 3 (Dkt. 111). However, BNSF says that because of the circumstances of the creation and eventual disclosure of the photographs, withholding them was not improper.[7] It argues that there is a "complete disconnect" between the new information (the photographs) and Mr. Blackwell's opinions in the supplemental report. *Id.* The supplemental report contains four numbered comments. Blackwell Suppl. Report (Dkt. 96-1). The first three of these comments expressly reference BNSF

---

[7] BNSF contends the photographs were protected by the work product doctrine, but disclosure to the Sherwoods was eventually necessitated by the inadvertent disclosure of the photographs to two of BNSF's experts, who included them in their files and relied on them in forming their expert opinions. *Id.* BNSF became aware of the inadvertent disclosure in mid-July 2017. *Id.*

photographs and Mr. Blackwell's opinions based on them. *Id.* They state or suggest that these opinions were informed by the newly-disclosed photographs. The fourth comment contains Mr. Blackwell's opinion that BNSF has a "recurring practice" of failing to preserve and/or willfully destroying evidence and withholding or delaying production of evidence.[8] *Id.* This comment relates to BNSF's request at Mr. Blackwell's deposition for a list of cases in which BNSF has been sanctioned or criticized by a judge for hiding or destroying evidence.

Whether BNSF's withholding of the photographs from July 21, 2014 was wrongful or improper is not before the Court, and no opinion is expressed as to that issue. The critical fact is that, wrongful or not, the disclosure of those photographs did not occur until July 2017 – after Mr. Blackwell's original report was disclosed and after the Sherwoods were to have disclosed all of their reports. The original Scheduling Order in this case, dated April 15, 2016, provided in part that "[p]ursuant to Local Rule 26.2(b), expert witnesses will not be allowed to offer any opinion not disclosed in the mandatory Rule 26 disclosures, supplementation, or deposition." (Dkt. 12.) Thus, for Mr. Blackwell to opine on the photographs, or to rely on them as support for his previously-stated opinions, the Sherwoods were required by the Federal Rules of Civil Procedure and by court order to supplement his report. Indeed, had the Sherwoods not disclosed just such a supplemental report, they would have risked an objection to Mr. Blackwell's relying on or making any reference to the newly-disclosed photographs. Regardless, the timing of the Sherwoods' disclosure of Mr. Blackwell's supplemental report was substantially justified by

---

[8] The Court perceives varying degrees of connection to the late disclosed photographs in the various comments made by Mr. Blackwell in his supplemental report, and certainly the arguable editorializing he engages in as to the nature of BNSF litigation discovery patterns seems beyond an appropriate matter for expert testimony, on the subject otherwise. Whether the Court will permit him to testify as to those particular details will have to await another day.

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO EXCLUDE AND DEFENDANT'S MOTION TO STRIKE – 16**

BNSF's own late disclosure of the photographs. For this reason, BNSF's motion is denied as to Mr. Blackwell's supplemental report dated August 15, 2017.

Separately, BNSF requests in its reply brief on the instant motion that a second supplemental report by Mr. Blackwell, dated November 13, 2017, be struck. Reply ISO Mot. to Strike 7 (Dkt. 111). BNSF notes that it could not seek such relief in its original motion, filed October 12, 2017, because the second supplemental report had not yet been disclosed. *Id.* Nonetheless, the request was not made by motion and the Sherwoods have had no opportunity to respond to the request by memorandum. Accordingly, the request is not properly before the Court and the record is inadequate for its consideration. Therefore, the Court will not consider the request at this time.

2. **Expert Charles Greear's Supplemental Reports.**

BNSF moves to strike a "supplemental" report dated August 7, 2017 and a "second supplemental" report dated September 5, 2017, both disclosed by the Sherwoods' expert Charles Greear. Mem. ISO Mot. to Strike 2–3 (Dkt. 66-1). BNSF contends Mr. Greear failed to timely produce materials cited in "his original and first supplemental reports," quoting portions of Mr. Greear's deposition taken August 10, 2017. *Id.* at 3–6 (citing Greear Dep. (Dkt. 68-11)). BNSF identifies two categories of materials: a video Mr. Greear created July 3, 2017, and documents pertaining to motorcycle training dated from May 2016. *Id.* at 3–4. BNSF does not explain the significance of these materials. Both categories of materials relate to Mr. Greear's initial or rebuttal report, and not to any of his supplemental reports. But BNSF's motion seeks to strike Mr. Greear's supplemental reports. *Id.* at 2, 11. Because BNSF's motion does not seek to strike

Mr. Greear's initial or rebuttal report,[9] the Court will not consider arguments related solely to those reports.

BNSF's briefing has numbered sections addressing Mr. Blackwell's August 15, 2017 supplemental report and Mr. Greear's second supplemental report, *id.* at 8, but it has no section addressing Mr. Greear's first supplemental report. It quotes several sections of Mr. Greear's deposition transcript, but it does not explain how those quotes support striking the first supplemental report. The Court finds no justification to strike Mr. Greear's first supplemental report, dated August 7, 2017, and therefore denies BNSF's motion as to that report.

Mr. Greear's second supplemental report, dated September 5, 2017, rebuts a report by BNSF's expert Dr. James R. Funk. Greear Second Suppl. Report (Dkt. 68-3). It is based on BNSF's disclosure of Excel spreadsheets provided by Dr. Funk in response to a subpoena on August 25, 2017 and on Mr. Greear's viewing on August 29, 2017 of videos taken by BNSF locomotives that happened to pass through the crossing shortly after Mr. Sherwood's crash while first responders were on-scene. Dr. Funk had created and relied on the spreadsheets to prepare his report, but, despite a discovery request for electronic files in native format, he disclosed PDF documents showing his inputs and final results – but not his calculations. Plfs.' Mem. in Opp'n to BNSF's Mot. to Strike 15 (Dkt. 96). Dr. Funk refused to disclose the spreadsheets in native format, claiming they were proprietary. *Id.* at 16. The Sherwoods served Dr. Funk with a subpoena on August 17, 2017, resulting in BNSF's disclosures of the spreadsheets on August 25, 2017. *Id.* Mr. Greear's second supplemental report was disclosed eleven days later.

---

[9] BNSF expressly acknowledges this in its reply brief: "BNSF's motion to strike does not address Mr. Greear's original report or his rebuttal report – because both of those reports were timely completed and produced." Reply ISO Mot. to Strike 10 (Dkt. 111).

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO EXCLUDE AND DEFENDANT'S MOTION TO STRIKE – 18**

The report also disclosed Mr. Greear's opinions related to "video-on-board" (or "VOB") footage taken by two trains that went through the crossing while Mr. Sherwood was present. BNSF faults the Sherwoods and Mr. Greear for not viewing the footage earlier. Mem. ISO Mot. to Strike 3 (Dkt. 66-1). BNSF points out that two screenshots of the videos were first provided to the Sherwoods on April 4, 2016. *Id.* It asserts that "[t]he video frames Mr. Greear viewed were not available for production due to the nature of the BNSF software for the videos, but they were available for viewing by Mr. Greear at any time after the April 2016 disclosure." *Id.* BNSF refused to produce the footage to the Sherwoods, instead requiring that Mr. Greear review it at the offices of BNSF's counsel. Greear Second Suppl. Report 1 (Dkt. 68-3). The Sherwoods contend they timely requested access to the videos as soon as they learned the screenshots from April 2016 were frames from video footage that could be made available. Plfs.' Mem. in Opp'n to BNSF's Mot. to Strike 13 (Dkt. 96). They contend that when BNSF produced the screenshots it did not indicate that they were part of a video that the Sherwoods or the experts could view.

This Court has previously ordered BNSF to produce "[c]omplete copies of any and all VOB or 'video on board' footage recording the period during which the train is passing through the crossing on the day of Mr. Sherwood's incident as well as 60 seconds before and 60 seconds after such footage." MDO re: Mot. to Compel 30 (Dkt. 134). In light of such an order, the Court will not now hold that the Sherwoods were remiss in not having their expert opine sooner on materials to which they did not have the access they should. In terms of the applicable standard, the Sherwoods' late disclosure of Mr. Greear's second supplemental report is substantially justified because of BNSF's own delay in disclosing Dr. Funk's spreadsheets and the VOB footage. BNSF's motion to strike is denied as to Mr. Greear's second supplemental report.

# CONCLUSION

BNSF's motion to exclude is granted in part, because as to certain witnesses and documents the Sherwoods have not shown that their delay in disclosure was substantially justified or harmless. BNSF's motion to strike is denied, because any delay in the Sherwoods' disclosure of the supplemental reports at issue was substantially justified or harmless.

# ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's Motion to Exclude Untimely and Late Disclosed Witnesses and Medical Records (Dkt. 58) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Dr. Diane Frost is excluded as a witness;

(2) Those portions of the Sherwoods' supplemental disclosure dated September 28, 2017 regarding Dr. Rita Romero are excluded; and

(3) Pages 2 and 9–15 of the Sharp Medical Records (Dkt. 91-30) included in the Sherwoods' supplemental disclosure dated October 6, 2017 are excluded.

The Motion to Exclude is otherwise denied, in all respects.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Supplemental Reports of Richard Greear and Alan Blackwell (Dkt. 66) is **DENIED**.

DATED: **July 6, 2018.**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge