UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT WILLIAM SHERWOOD and PAMELA LOUISE SHERWOOD,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation, dba The Burlington Northern and Santa Fe Railway Company, and JOHN DOES I through X,<br><br>Defendants. | Case No. 2:16-cv-00008-BLW<br><br>**MEMORANDUM CLARIFYING THE COURT'S ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In March 2018, the Court entered an order denying Defendant BNSF Railway Company's motion for summary judgment. *See* Dkt. 126. In that order, the Court reserved ruling on whether Idaho Code § 62-306 applies to this case, anticipating a fuller factual record. Additionally, the Court indicated there was a possibility it would instruct the jury on premises liability law, but it also stated that other duties may apply, including the heightened duty of "special care and watchfulness."

With the benefit of additional briefing from the parties, and to help the parties sharpen their focus in preparing for trial, the Court will now clarify these issues, which relate to the duty element of plaintiff's negligence claim. As will be explained further below: (1) Idaho Code § 62-306 applies to this case; (2) the duty of special care and watchfulness also applies; and (3) there is no need to instruct the jury regarding duties arising under premises liability law.

## BACKGROUND

This case involves a bicycle wreck at a railroad crossing on Schweitzer Mountain Road, just outside Sandpoint, Idaho. Plaintiff Robert Sherwood alleges that as he was riding over the crossing, his front tire lodged in a narrow gap between two cement panels, which caused him to be thrown over his handlebars and onto the pavement. Defendant contends Sherwood over-braked, which caused him to be thrown over his handlebars. Either way, Sherwood's injuries are extensive. He is suing BNSF for negligence.

## DISCUSSION

Trial is scheduled to begin on March 4, 2019. The parties have submitted competing jury instructions regarding the duty element of Sherwood's negligence claim. The four elements of negligence are: (1) duty; (2) breach; (3) causation; and (4) damages. The existence of a duty is generally a question of law, although it may be a question of fact if there are factual disputes. *See Forbush v. Sagecrest Multi Family Prop. Owners' Ass'n, Inc.*, 396 P.3d 1199, 1205 (Idaho 2017); *see Gagnon v. W. Bldg. Maint., Inc.*, 306 P.3d 197, 200 (Idaho 2013).

Plaintiff asks the Court to instruct the jury that BNSF owed him two duties: (1) a statutory duty to maintain the railroad crossing in a smooth and firm condition; and (2) a special duty of special care and watchfulness. BNSF, on the other hand, contends that as a landowner, its only duty was to warn Sherwood of known hazards.

### A. The Duty Arising Under Idaho Code § 62-306.

Regarding the statutory duty, Idaho Code § 62-306 requires railroad companies to maintain crossings "at all times in a smooth and firm condition." Idaho Code § 62-306.[1] On summary judgment, BNSF argued that the railroad crossing at issue is not covered by the statute because it only applies to "state or county highways," and Schweitzer Mountain Road is not a "state or county highway." In denying BNSF's motion, Judge Lodge[2] discussed this issue extensively, stating that the statute was "ambiguous as applied in this case," Dkt. 126, at 7, and that there was a factual dispute as to whether the statute applied to the crossing at issue. *Id.* Judge Lodge ultimately refrained from deciding the issue, explaining that "the Court does not have sufficient record or argument

---

[1] The entire statute reads as follows: "Whenever a state or county highway crosses or shall hereafter cross a railroad at grade, the railroad company shall at its own expense construct and maintain that portion of such highway between the rails and for a distance of not less than two (2) feet outside the outer rails. **The crossing** shall be planked or surfaced with other suitable material for the full width of the traveled way, including shoulders, and **shall be maintained at all times in a smooth and firm condition**. Where a public agency having jurisdiction of the highway crossing the railroad wishes to have the crossing surfaced with material of higher quality, the public agency and the railroad company may agree that the railroad company install the material and that the additional cost, over and above the cost of the railroad company's standard installation, may be paid for by the public agency with public funds." Idaho Code § 62-306 (emphasis added).

[2] This case was reassigned to me in December 2018. Before that, Judge Edward J. Lodge presided over the case, and he entered the March 2018 order. For that reason, and for the sake of clarity, I will at times refer to the March 2018 order as Judge Lodge's order.

to interpret the statute as applied to the Crossing at issue and simply finds that Defendants have failed to meet their burden of persuasion on summary judgment." *Id.* at 12.

At the pretrial conference on February 19, 2019, the Court raised this issue, asking the parties whether they intended to present evidence at trial that would bear on the resolution of this issue. Neither party indicated an intention to submit further evidence regarding § 62-306, and defense counsel expressly stated that BNSF believed application of § 62-306 is a legal question to be decided by the Court. Accordingly, the Court will decide the issue on the current record.

After having reviewed the parties' summary-judgment briefing and trial submissions, the Court concludes that Schweitzer Mountain Road is encompassed within the meaning of the statutory term "state or county highway." *See* Idaho Code § 62-306. Judge Lodge discussed this particular issue extensively in his March 2018 order, where he carefully explained why plaintiff's reading of the statute was reasonable. *See* Dkt. 126, at 7-11. The Court agrees with that logic and will not restate it here, other than to clarify that: (1) the Court finds plaintiff's reading of the statute superior to defendant's; and (2) the Court concludes that the statute applies in this case.

In its trial briefing, BNSF raised a new argument as to why the statute should not apply. *See BNSF Reply in Support of Trial Br.*, Dkt. 203, at 8-9. BNSF now argues that the statute fails to clearly define the required standard of conduct and thus cannot replace duties arising under premises liability law.

In Idaho, it is "well established" that a statute "may define the applicable standard of care owed" and that "violations of such [a] statute[] . . . may constitute negligence per se." *Boswell v. Steele*, 348 P.3d 497, 506 (Idaho Ct. App. 2015). Generally:

> In order to replace a common law duty of care with a duty of care from a statute . . . the following elements must be met: (1) the statute . . . must clearly define the required standard of conduct; (2) the statute . . . must have been intended to prevent the type of harm [alleged]; (3) the plaintiff must be a member of the class of persons the statute . . . was designed to protect; and (4) the violation must have been the proximate cause of the injury.

*Obendorf v. Terra Hug Spray Co.*, 188 P.3d 834, 841 (Idaho 2008) (quoting *O'Guin v. Bingham Cnty.*, 122 P.3d 308, 311 (Idaho 2005)).

BNSF says nobody knows what it means to maintain the roadway in a "smooth and firm" condition, and, therefore, "no one knows what exactly would violate the statute." *See BNSF Reply*, Dkt. 203, at 9. The Court is not persuaded. The jury can determine whether BNSF maintained the crossing in a "smooth and firm" condition giving those words their ordinary meaning. The Court therefore intends to instruct the jury that BNSF owed plaintiff a duty under Idaho Code § 62-306. The Court will settle on the precise wording of the instruction later, after conferring with the parties during the jury instruction conferences.

B.  **The Duty of Special Care and Watchfulness**

Plaintiff also asks the Court to instruct the jury that BNSF owes him a duty of special care and watchfulness. On this point, there is no particular need to clarify Judge Lodge's decision, as he plainly rejected defendant's argument that the duty of special

care and watchfulness cannot apply here. *See* Dkt. 126, at 13-15. Rather, after discussing the relevant Idaho authority, Judge Lodge stated that "the heightened duty of watchfulness and care may apply *provided that the Plaintiffs present evidence that the Crossing was used 'constantly' or people might otherwise be expected on the track at that location*." Dkt. 126, at 15 (emphasis added). In other words, so long as plaintiff presents this evidence at trial, the factual predicate for the duty is there, and the Court will instruct accordingly. At the pretrial conference, plaintiff's counsel indicated that plaintiff intends to present evidence on this issue at trial.

Despite Judge Lodge's ruling, BNSF continues to argue that the special duty of care and watchfulness does not apply and that premises liability is the exclusive source of duties it owes to Sherwood. For that reason, the Court will briefly address the point here.

BSNF says the duty of special care and watchfulness cannot be applied because Sherwood was not injured by a moving train and there was no one around (a train conductor, for example) to keep her eyes open and exercise the "special duty of care and watchfulness." To support this logic, BNSF characterizes the entire line of Idaho's "special care and watchfulness cases" as follows: "[T]he mechanism of injury in each of the special care and watchfulness cases was railroad equipment (a train or something on a train), which required railroad personnel to be present and exercise or perform the duty of special care and watchfulness." *Defendant's Reply in Support Trial Br.*, Dkt. 203, at 4.

This is not an accurate characterization of Idaho law. In *Reardon v. Union Pacific Railroad*, 475 P.2d 370 (Idaho 1970), a twelve-year-old girl injured herself when she

stepped on a broken bottle while walking across a railroad right-of-way. Under BNSF's logic, the *Reardon* case should have been analyzed under premises liability law because it did not involve a moving train inflicting injury upon the plaintiff. But the Supreme Court framed the analysis under the special care and watchfulness standard:

> The first question then that must be answered is, did the Union Pacific Railroad violate any duty to the injured pedestrian? In considering this question, this Court is not unmindful of the line of decisions which hold that where people may be expected on the right of way or where the railroad property is used constantly by pedestrians, *then the railroad company is bound to exercise special care and watchfulness*.

*Id.* at 372 (emphasis added; *citing Anderson v. Great Northern Ry.*, 99 P. 91 (Idaho 1908); *Keim v. Gilmore & Pittsburg R.R.*, 131 P. 656 (Idaho 1913); *Pro v. Penn. R.R.*, 390 Pa. 437 (Penn. 1957)). The *Reardon* Court determined that no duty arose, but only because (1) the plaintiff, Karen Reardon, "was not proceeding along an established pathway or one constantly used by pedestrians;" and (2) "people were not expected on the route taken by Karen since the evidence supports the findings of the trial court that the 'pathway' taken by Karen was covered with weeds." *Id.* And perhaps more to the point here, *Reardon* went on to clarify that "it is not necessary to determine the status (e.g., invitee, licensee, trespasser) of the injured party with respect to the owner of the land." *Id*. (*relying on Anderson*, 99 P. 91).

      The Court is thus unpersuaded by BNSF's latest argument as to why the duty of special care and watchfulness does not apply and will therefore reiterate Judge Lodge's earlier statement: so long as the factual predicate for the duty is presented at trial, the Court will instruct on the duty of special care and watchfulness. The wording of that

instruction will be decided later.

Based on its characterization of the special-care-and-watchfulness cases, BNSF also has recently argued – for the first time – that Idaho tort law is preempted by federal law. *See Defendant's Reply in Support of Trial Br.*, Dkt. 203, at 5-7. According to BNSF, if the Court applies the duty of special care and watchfulness to this case, this means that the Court would effectively be requiring BNSF – "in the State of Idaho only" – "to have personnel present at all crossing at all times to perform the duty of special care and watchfulness." *Id.* at 5. For the reasons explained above, BNSF's characterization of the special-care-and-watchfulness cases is inaccurate, and, accordingly, its conclusion that it now must have personnel at crossings at all times is illogical. The Court is thus unpersuaded by the preemption argument.[3]

## C.   Premises Liability

The final issue is whether the Court must instruct the jury on premises liability law. As noted, BNSF argues that premises liability law is the exclusive source of the duties the railroad owed to Mr. Sherwood. This is incorrect, as illustrated by the cases discussed earlier and also by *O'Guin v. Bingham County*, 122 P.3d 308, 311 (Idaho 2005). In *O'Guin*, the Idaho Supreme Court held that duties owed under the common law

---

[3] BNSF has also stated that if this duty is applied, "BNSF reserves the right to argue preemption and move for summary judgment on that basis." *BNSF Reply in Support of Trial Br.*, Dkt. 203, at 7. No such motion will be entertained. The dispositive-motion deadline has long since passed and BNSF did not even suggest it could satisfy the standard to extend the deadline to file a second, late summary-judgment motion.

**MEMORANDUM DECISION AND ORDER - 8**

could be replaced with a duty of care laid out in a statute or regulation. What's more, the *O'Guin* Court said it would be error for the trial court to insist upon applying duties from premises liability law if "statutory negligence" applied. *See id.* This passage from the opinion – in which the Idaho Supreme Court explains how the trial court erred – clarifies the point:

> After concluding the regulations established a duty and that the County had breached that duty, the district court held 'the O'Guins' allegations of negligence per se do not change the duty owed by the County to trespassers.' *This was error. There was no need for the district court to look to the common law duty owed to trespassers once it determined the statutory duty applied.* . . . A statute that adequately defines the required standard of care 'supplants the reasonable person standard encompassed in the concept of ordinary negligence.' If a breach of the County's statutory duty requires willful or wanton conduct, imposition of the common law's higher burden would be contrary to the express language of the statute and essentially remove the statutory command to fence or otherwise block access to unauthorized users.

*Id.* at 313 (emphasis added; internal citations omitted). Based on *O'Guin*, because the Court has now determined that an Idaho statutory duty applies, there is no need to keep hunting for a separate, lesser duty BNSF owed to Sherwood, and then apply that duty to the exclusion of the duty laid out in the statute.

In light of this ruling, which is consistent with Judge Lodge's March 2018 decision – as he repeatedly stated that premises liability duties were not the only duties BNSF potentially owed to plaintiff – the Court will clarify this statement from the March 2018 decision:

> To the exten[t] Plaintiffs' claims are premised upon the Defendant's conduct apart from the condition of the property and Defendants' acts or omissions concerning property inspection and maintenance, then the

> ordinary duty of care may apply. However, if Plaintiffs' claims are
> premised solely on the condition of the property and Defendants' acts
> or omissions concerning property inspection and maintenance, then the
> Court will instruct the jury on premises liability law.

Dkt. 126, at 17. Citing this portion of the decision, BNSF has repeatedly argued that the Court is bound to instruct the jury on premises liability law.

The Court disagrees. First, it's important to place those two sentences of the 19-page decision in context. When Judge Lodge made these statements, he had had already marched through a lengthy analysis of other duties BNSF might owe plaintiff. So in the broadest sense, it's not accurate to say that the Court intended to limit plaintiff to premises liability law. Additionally, Judge Lodge discussed duties arising under premises liability law only after he had left open the possibility that plaintiff might not be able to proceed to trial on his two preferred theories – statutory negligence and violation of the duty of special care and watchfulness.

In that context, it made sense to attempt to figure out whether premises liability law might ultimately apply. But the Court has now determined that plaintiff may pursue his theory of statutory negligence. That decision alone means that the Court is not required to instruct the jury on duties arising under premises liability law.

## CONCLUSION

For all these reasons, the Court clarifies the March 2018 Order as follows: (1) the statutory duty to maintain the railway crossing in a smooth and firm conditions applies to this case; (2) assuming plaintiff presents the necessary facts, the Court will instruct the jury on the special duty of care and watchfulness; and (3) the Court does not intend to

instruct the jury on duties arising under premises liability law.

DATED: February 22, 2019

B. Lynn Winmill
U.S. District Court Judge