UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT WILLIAM SHERWOOD and PAMELA LOUISE SHERWOOD, husband and wife,<br><br>    Plaintiffs,<br><br>    v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation d/b/a The Burlington Northern and Santa Fe Railway Company, and JOHN DOES I through X,<br><br>    Defendants. | Case No. 2:16-cv-00008-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

On July 14, 2014, Plaintiff Robert Sherwood cycled over a railroad crossing near Sandpoint, Idaho. He alleges that his front tire lodged in a narrow gap between two cement panels at the crossing, which caused him to be thrown over his handlebars and onto the pavement. Defendants contend that Mr. Sherwood over-braked, which caused him to flip over his handlebars. Mr. Sherwood suffered severe injuries and now sues for negligence.

Trial is scheduled to begin on March 4, 2019. Currently before the Court are

several motions in limine. *See* Dkts. 162, 163, 164, 167, 173, 174, 175.[1] Having considered the briefs and the record in this case, the Court has determined that oral argument is unnecessary and issues the following Order.

**LEGAL STANDARD**

Many of the pending motions relate to expert witnesses. Whether and to what extent experts may testify at trial is addressed under the well-known standard first enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993), and now set forth in Rule 702 of the Federal Rules of Evidence. Rule 702 establishes several requirements for permitting expert opinion testimony. First, the evidence offered by the expert must assist the trier of fact either to understand the evidence or to determine a fact in issue. *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010); Fed. R. Evid. 702. The witness must also be sufficiently qualified to render the opinion. *Id.* at 563. If specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified by knowledge, skill, experience, training or education may offer expert testimony where: (1) the opinion is based upon sufficient facts or data, (2) the opinion is the product of reliable principles and methods; and (3) the witness has applied those principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert* 509 U.S. at 592–93; *Kumho Tire Co. v. Carmichael*,

---

[1] Earlier in this litigation, the Court denied several of the Parties' motions in limine without prejudice. *See* Dkt. 151, denying Motions at Dkts. 43, 44, 45, 62, 64, 75. The parties have now renewed each Motion as previously filed at Dkts. 162, 163, 164, 173, 174, 175.

526 U.S. 137, 147 (1999).

The inquiry is a flexible one. *Primiano*, 598 F.3d at 564. Ultimately, a trial court must "assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Id*. In determining whether expert testimony is reliable and relevant, the Court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Boyd v. City and County of San Francisco*, 576 F.3d 938, 945 (9th Cir.2009). *Daubert* and its progeny reveal that exclusion of expert testimony is the exception rather than the rule. Fed. R. Evid. 702, Adv. Comm. Notes (2000).

## ANALYSIS

1. **Plaintiffs' Motions in Limine**

At issue are Plaintiffs' motions to exclude testimony from three defense experts: (1) Timothy Arnold, a bicyclist and bicycle mechanic, (2) Dr. Ron Klein, a psychologist, and (3) Cloie Johnson, a life care planner. The Court will address each motion in turn.

   **A. Motion to Limit Testimony of Timothy Arnold (Dkts. 43, 162)**

At trial, Defendants intend to offer expert opinion testimony from Timothy Arnold. Mr. Arnold is an experienced cyclist and a bicycle mechanic. *See* Dkt. 43-6. If permitted to do so, he plans to testify as to the cause of plaintiff's accident. He will opine that plaintiff slammed on his brakes and flipped over the handlebars because only the front brake was working. *See Id.* at 11.

Plaintiffs argue that Mr. Arnold is qualified only to the extent he wishes to testify as to "the cycling standard of care – *i.e.*, whether it was safe to ride over the crossing at fifteen to eighteen miles per hour." Dkt. 90, at 9. Otherwise, to the extent Mr. Arnold intends to testify as to why Mr. Sherwood crashed, or the dynamics of the crash, Plaintiffs believe this testimony should be excluded because Mr. Arnold is not a trained crash reconstructionist. *Id.* Defendants attempt to distinguish Mr. Arnold's opinion from that of a reconstructionist by asserting his opinion is based on technical and specialized knowledge in bicycles which qualifies him to opine on "factual scenarios that cause specific damage to bicycles." Dkt. 79 at 2.

The Court generally agrees with Plaintiffs. Although Mr. Arnold is an able bicycle mechanic and rider, he bases much of his planned opinion testimony upon factors that involve accident reconstruction, including, for example, Mr. Sherwood's speed at the time of the accident. *See, e.g*. Dkt. 43-6 at 11. In addition, Mr. Arnold's report relies upon a "review of the photographs available" and an "inspection of the scene;" a personal reenactment of the accident by riding his bike over the same railroad crossing; and an assessment of Mr. Sherwood's "alleged line" of travel the day of the accident. *Id.* at 4, 8. These aspects of Mr. Arnold's opinion go beyond the scope of his expertise as a bicyclist and bicycle mechanic and enter the realm of accident reconstruction—an area in which Mr. Arnold is not qualified to offer expert testimony.

Not all Mr. Arnold's anticipated testimony exceeds the scope of his qualifications. Mr. Arnold is an able bicycle mechanic and rider with proper qualifications in this area.

*See* Dkt. 43-6 at 2, 12-13. He has operated a bicycle shop for nearly twenty-five years, was a professional bicycle racer, taught community college classes on bicycle maintenance, and has experience designing and building bike wheels and testing relevant products. Dkt. 43-5 at 7, 20, 50. In his report, Mr. Arnold indicated that he inspected Mr. Sherwood's bicycle and would offer opinions on "maintenance defects," the "Trek Incite 8i bicycle computer," information regarding safe cycling behavior, and the "mechanics" that were involved in the accident so far as it relates to the "mechanics" of bicycles and not "mechanics" of how accident may have occurred. Dkt. 43-6 at 2, 6-7, 10, 12-13. Mr. Arnold must avoid providing testimony that re-constructs the accident, but may testify as to the nature of the damage he observed to Mr. Sherwood's bicycle as long as he relies on his technical or specialized knowledge and experience related to bicycles.

Therefore, Plaintiffs' motion to exclude Mr. Arnold's testimony will be granted to the extent the witness attempts to offer expert opinion regarding accident reconstruction, but otherwise is denied. The Court will allow Mr. Arnold to offer expert opinions regarding: (1) general bicycle safety; (2) bicycle maintenance; (3) the condition of Mr. Sherwood's bicycle; (4) the general phenomenon of a bicycle somersaulting if the rider applies too much pressure on the front brake; and (5) the nature of the damage he observed to Mr. Sherwood's bicycle.

### B. Motion to Exclude Timothy Arnold's Video Recreations (Dkt. 167)

In a related motion, Plaintiffs ask the Court to exclude videos Mr. Arnold created as part of his investigation. Dkt. 167. Mr. Arnold used a GoPro camera attached to his

helmet and recorded himself riding over the railroad crossing several times. *Id.* Plaintiffs argue these videos should be excluded because they are irrelevant and prejudicial. *See* Dkt. 167-1 at 2 (citing Fed. R. Evid. 401, 402, 403). Specifically, Plaintiffs argue BNSF cannot carry its burden of demonstrating that Mr. Arnold's video is substantially similar to the event in issue, i.e. Mr. Sherwood's bicycle crash on July 14, 2014. *Id.* at 4-5. As Defendants point out, however, the video serves to show the jury "what it looks like to approach and ride across a railroad crossing at 18 miles per hour – which is the approximate speed all experts in this case used in formulating their opinions, for both parties." Dkt. 192, at 3. In other words, Defendants acknowledge the videos are not intended to serve as a reconstruction of Mr. Sherwood's accident. The video may assist the jury in providing it a generalized understanding of the accident scene and what was involved in negotiating the intersection at the same speed as Mr. Sherwood.

However, as such, the video is, at most, a demonstrative exhibit with no substantive relevance – i.e., it may be helpful to the jury but does not make any disputed fact more or less probable than it would be without the evidence. Accordingly, the exhibit will not be admitted as an exhibit at trial. However, the Court will allow it to be played to the jury as a demonstrative with an appropriate limiting instruction advising the jury of the very limited purpose for which the video is being shown to them. It will not accompany the jury into the jury room during their deliberations.

    C.    **Motion to Limit Testimony of Dr. Ronald Klein's (Dkt. 44, 164)**

Plaintiffs also seek to exclude portions of Dr. Ronald Klein's testimony, specifically Dr. Klein's opinions regarding: (1) Mr. Sherwood's motives for pursuing this lawsuit; (2) accident reconstruction and Mr. Sherwood's character; and (3) the objectivity of Mr. Sherwood's treating medical providers. Dkt. 44 at 1-3.

**(1) Dr. Klein's Opinions Regarding the Motivations for the Lawsuit**

Plaintiffs argue that Dr. Klein's expert report failed to disclose opinions regarding Mr. Sherwood's "alleged motivations for pursuing this lawsuit." *See* Dkt. 44-1 at 6. Rule 26 requires an expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Despite Rule 26's requirement of a "complete statement" of "all opinions," federal courts generally allow an expert to "supplement, elaborate upon, and explain his report in his oral testimony," as long as he does not provide entirely new opinions that were not disclosed in his expert report. *See, e.g., Godinez v. Huerta*, No. 16-CV-0236-BAS-NLS, 2018 WL 2018048, at *8 (S.D. Cal. May 1, 2018). Federal Rule of Civil Procedure 37(c) provides two exceptions: (1) when the failure to disclose is substantially justified, or (2) when the nondisclosure is harmless. *R & R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240 (9th Cir. 2012).

Here, Plaintiffs seek to prevent Dr. Klein from offering opinions on whether Mr. Sherwood was motivated to pursue this lawsuit to "make up for past wrongs" from a business transaction or to emulate the opportunistic behavior of his late father. Dkt. 44-3. at 9, 13-15. Dr. Klein performed a psychological evaluation and assembled a report on

Mr. Sherwood to "determine whether psychological and/or neuropsychological injuries had been sustained as a consequence of [the accident at issue]." Dkt. 44-2 at 2. But, Dr. Klein's report does not include an opinion regarding Mr. Sherwood's alleged motivations for bringing this lawsuit. *See generally, Id.* Dr. Klein devoted his report to the issue of Mr. Sherwood's "psychological and/or neuropsychological injuries" and whether those injuries were caused by the accident or whether they existed before the bicycle accident. Dkt. 44-2 at 2. Because Mr. Sherwood's motivations for bringing this lawsuit were not included in Dr. Klein's expert report, his opinions about motivation are not elaborations of his report, and they do not fit the Rule 37 exceptions, Dr. Klein may not offer expert opinion on that issue at trial.

**(2) Dr. Klein's Opinions Regarding Crash Reconstruction and Character**

Plaintiffs also ask the Court to prevent Dr. Klein from testifying regarding (1) Mr. Sherwood's "character for speed," (2) "the danger of speed," and (3) "crash reconstruction." Dkt. 44-1 at 8.

First, Plaintiffs argue that Dr. Klein testifying about Mr. Sherwood's "character for speed" constitutes inadmissible character evidence under F.R.E. 404(b)(1).[2] Dkt. 44-1 at 10. Dr. Klein developed a theory that Mr. Sherwood has a certain "affinity for high speed" in his expert report and at his deposition. Dkt. 44-2 at 10; Dkt. 44-3 at 21-24.

---

[2] Plaintiffs also argue that Dr. Klein's "affinity" theory was not properly disclosed under F.R.C.P. 26(a)(2)(B)(i). Dkt. 44-1 at 10. This argument fails because Dr. Klein included the "affinity" theory in his report. Dkt. 44-2 at 11.

It is well-settled that evidence of a person's character is not admissible to prove that the person acted in conformity with his character on a particular occasion. Fed. Rule Evid. 404(a)(1) 2006 Adv. Comm. Notes ("[I]in a civil case evidence of a person's character is never admissible to prove that the person acted in conformity with the character trait."); *See also United States v. Firempong,* 624 F. App'x 497, 499 (9th Cir. 2015). Defendants counter that Dr. Klein's testimony regarding Mr. Sherwood's alleged "affinity for speed" is relevant to contributory negligence. Dkt. 77 at 8. Put another way, Defendants argue that Dr. Klein's general clinical impressions prove that Mr. Sherwood contributed to the accident by negligently traveling too fast that day. *See Id.* But the evidence still runs afoul of Rule 404. Dr. Klein's testimony about Mr. Sherwood's character as evidence that he acted in conformity with his alleged "affinity for high speed" the day of the accident is inadmissible. To be clear, Dr. Klein's opinions and evaluations regarding "psychological and/or neuropsychological injuries" and whether those injuries were "sustained as a consequence" of the bicycle accident are admissible under Rule 702. But, Dr. Klein's "affinity" theory of causation is not allowed under Rule 404.

Furthermore, as the Court discussed above regarding Mr. Arnold, an expert witness must be properly qualified to offer opinions on the general danger or risks involved with speed or crash reconstruction. The Court will not rehash its reasoning, but will simply point out that Dr. Klein is not qualified to testify as to the inherent dangers of high-speed bicycling or to offer opinions related to crash reconstruction. *See* Dkt. 44-2.

Therefore, the Court will grant Plaintiffs' motion to limit Dr. Klein's testimony regarding (1) Mr. Sherwood's "character for speed," (2) "the danger of speed," and (3) "crash reconstruction." Dkt. 44-1 at 8.

**(3) Dr. Klein's opinions regarding the objectivity of treating physicians**

Finally, Plaintiffs argue that Dr. Klein's opinions pertaining to treating physicians and their objectivity were not properly disclosed under Rule 26, are unhelpful to a jury under Rule 702, and are prejudicial under Rule 403. Dkt. 44-1 at 11. Dr. Klein did not examine the treating physicians in this case, and did not include any opinion related to them in his expert report. *See* Dkt. 44-2. Dr. Klein may speak to his own qualifications and expertise as a forensic medical expert, but may not compare his own medical objectivity to treating medical providers. *See* Dkt. 44-3 at 4-5. Any testimony about the treating providers would be beyond the scope of his written report under Rule 26, and unhelpful to the jury under because he has not examined any treating physicians. Thus, Dr. Klein's opinions regarding the lack of objectivity of treating physicians or the objectivity of forensic medical experts will be excluded.

In summary, Dr. Klein will not be allowed to testify regarding (1) Mr. Sherwood's motivations for bringing this lawsuit; (2) Mr. Sherwood's affinity for speed, the danger or risks of speed, and crash reconstruction; and (3) the lack of objectivity of treating physicians or the objectivity of forensic medical experts.

    **C.**    **Motion to Limit Testimony of Cloie Johnson (Dkts. 45, 163)**

Plaintiffs seek to limit Cloie Johnson's planned testimony in two ways. First, Plaintiffs seek to exclude Ms. Johnson's testimony that derives from nursing reference materials by preventing testimony (a) describing their content, (b) interpreting or applying those reference materials; and (c) opining as to whether Mr. Sherwood's life care planner, Liz Holakiewicz (also a nurse), complied with nursing standards as described in the reference materials. Second, Plaintiffs seek to prevent Ms. Johnson from: (a) "claiming that she met with Mr. Sherwood or performed a life care planning clinical interview;" and (b) "describing any observations she may have made during [Dr. Klein's] neuropsychological forensic evaluation." Dkt. 93, at 8.

**(1) Ms. Johnson's Testimony Regarding Nursing Materials and Ms. Holakiewicz's Life Care Plan**

First, the Court agrees that Ms. Johnson is not a nurse and is therefore not qualified to offer opinions regarding the practice of nursing or to base her testimony on nursing-specific reference materials. But, Ms. Johnson is qualified in the field of lifecare planning. *See* Dkt. 45-6. In that capacity she can offer expert opinions related to the procedures and methodology that Ms. Holakiewicz used in preparing her life care plan for Mr. Sherwood. In preparing her expert report Ms. Johnson conducted her "standard life care planning assessment," examining: the "nature and extent" of Mr. Sherwood's impairment, "future case services," and the "work product" quality of Ms. Holakiewicz's life care plan through the lens of her decades of experience in the lifecare planning field. Dkt. 45-3 at 9. The Court agrees that Ms. Johnson may not offer opinions pertaining to

Ms. Holakiewicz's work as a nurse, but she is certainly qualified to testify regarding whether Ms. Holakiewicz used the correct methodology for preparing a life care plan for Mr. Sherwood. The Court will therefore deny Plaintiffs' motion to exclude her testimony about Ms. Holakiewicz's life care plan.

**(2) The Rule 35 Stipulation and Order**

Plaintiffs also argue that Ms. Johnson should be precluded from offering testimony related to her participation in Dr. Klein's examination. Dkt. 45-1 at 7-10. Specifically, Plaintiffs seek to preclude Ms. Johnson from: (a) saying she "had the opportunity to meet Mr. Sherwood," or "performed a life care planning clinical interview," and (b) describing any observations she made during Dr. Klein's exam. *Id.* Plaintiffs first argue that allowing Ms. Johnson to testify regarding her observations from the examination and the list of questions she submitted to Dr. Klein violates a Rule 35 Stipulation and Order. *Id.*; *see also* Dkt. 27. Second, Plaintiffs claim that Ms. Johnson did not properly disclose any such observations as the basis of her report. Dkt. 45-1 at 9.

The Court is not persuaded. Here, Plaintiffs were not deprived from attending and objecting to Ms. Johnson's attendance at the May 3, 2017 examination. Dkt. 27 at 2. Plaintiffs were also free to ascertain the scope of the Rule 35 Stipulation and Order and whether Ms. Johnson would be permitted to attend. The language of the Rule 35 Order and Stipulation does not support Plaintiffs' assertion that Ms. Johnson was prohibited from attending the examination or submitting questions pertinent to her report to Dr.

Klein; nor does Rule 35 support such a prohibition. *See Id.*; Fed. R. Civ. P. 35. Thus, Ms. Johnson is not precluded from saying that she sat in on the Rule 35 exam.

Even if Ms. Johnson should not have attended the Rule 35 examination, Plaintiffs admit that she could have reviewed the video of the entire examination. As Defendants point out, "Ms. Johnson would have all the same information from the video of the examination, even if she [had] not attend[ed] in person." Dkt. 81 at 6. Given that Plaintiffs have admitted that Ms. Johnson could have reviewed the video in any event, she is not precluded from testifying as to any observations made during that examination. Thus, Ms. Johnson's attendance and clinical observations: did not deprive the Plaintiffs an opportunity to object, did not violate Rule 35, and it did not violate the Rule 35 Stipulation and Order (Dkt. 27).

Finally, the Court is not convinced, as Plaintiffs suggest, that it would be prejudicial or misleading under Rule 403 for Ms. Johnson to tell the jury she "met" with Mr. Sherwood. Dkt. 45-1 at 8. Nor is it misleading for Ms. Johnson to say that she clinically observed Mr. Sherwood. Ms. Johnson did in fact meet with Mr. Sherwood on May 3, 2017 during Dr. Ronald Klein's mental examination. *Id.*; *see also* Dkt. 81 at 4. As such, the Court disagrees with Plaintiffs that Ms. Johnson's testimony about "meeting" with Mr. Sherwood would be unfairly prejudicial or confusing under Rule 403.

For the foregoing reasons Plaintiffs motion to limit portions of Cloie Johnson's expert testimony will be denied.

2. **Defendants' Motions in Limine**

Defendants seek to limit or exclude testimony from two witnesses: (1) Charles Greear, a crash reconstructionist; and (2) James Sobek, a forensic engineer.[3]

A. **Motion to Exclude Testimony of Charles Greear (Dkt 64, 174)**

Defendants argue that Charles Greear's testimony should be excluded because it is irrelevant and unreliable under Rule 702. Dkt. 64 at 1.

Federal Rule of Evidence 702 "allows admission of 'scientific, technical or other specialized knowledge' by a qualified expert if it will 'assist the trier of fact to understand the evidence or determine a fact in issue.'" *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). Defendants argue that Mr. Greear fails to "provide any scientific or specialized knowledge to assist the trier of fact in determining what happened [because] his opinion conclusively tells the jury what happened based on his admitted speculation." Dkt. 64-1 at 17. Specifically, Defendants assert that Mr. Greear bases his opinion on Mr. Sherwood's belief of how the accident occurred and simply repeats the same theory under the "guise of expert opinion." *Id.* at 16-17.

Mr. Greear's opinions are both relevant and sufficiently reliable under Rule 702. Mr. Greear performed a detailed analysis that will assist the trier of fact. For instance,

---

[3] Defendants also filed a motion in limine asking the Court to exclude medical opinion testimony from lay witnesses Danielle Justin and Michelle Farella. *See* Dkt. 62. Plaintiffs, however, indicated that they do not intend to call these witnesses as experts. The parties thus agree on the parameters for these witnesses' planned testimony and no ruling on the motion in limine is necessary at this time.

Mr. Greear applied numerous reconstruction calculations including "acceleration rates," "roadway radius analysis," "throw distance calculations," and "force calculations" to come to his conclusion. Dkt. 96-35 at 10-11; Dkt. 96-2. Mr. Greear also considered alternate theories of how the accident might have occurred, including the theory of Defendant's expert, Dr. Funk. Dkt. 96-35 at 11-12. Since Mr. Greear's opinion distinguishes Dr. Funk's opinion, is based upon his own calculations and specialized scientific knowledge, and evaluates Mr. Sherwood's story, his opinion will be useful to the trier of fact under Rule 702.

Defendants also assert that Mr. Greear's testimony is unreliable. Dkt. 64 at 9. Particularly, Defendants argue that Mr. Greear "lacks any facts or data, and performed no calculations, to support plaintiffs' theory of the accident" and that he "has no training or experience in analyzing or reconstructing _sole_ bicycle accidents such as this one. . .." *Id.* 18-19. But, as explained above, Mr. Greear did indeed base his opinions on numerous calculations and data. *See* Dkt. 96-35. The fact that Dr. Greear did not conduct "destructive testing" like the Defendant's expert conducted does not invalidate Dr. Greear's own methodology, which involved physical calculations. Indeed, both Mr. Greear's opinion and Defendant's expert, Dr. Funk, considered the same objective data—the Runtastic GPS data—to formulate their opinions. Dkt. 99 at 18-19;

Further, Mr. Greear's reconstruction methodology is based on extensive reconstruction qualifications and experience. Mr. Greear has 1,015 hours of formal crash investigation and crash reconstruction training, he has been certified by the Accreditation

Commission for Traffic Accident Reconstructionist, he has years of experience as a collision investigator and reconstructionist, and he teaches crash investigation and reconstruction classes at the Idaho Peace Officers Standards and Training (POST) and Washington Criminal Justice Training Center (WCJTC) Dkt. 96-5 at 1, 20-22. While it is true that Mr. Greear has never investigated a bicycle-only type crash, this Court is not convinced that single-bicycle-related experience is an essential qualification for accident reconstruction. Mr. Greear's qualifications in the reconstruction of motorcycle, automobile, and pedestrian accidents qualify him to reconstruct a crash involving a single cyclist.

For the foregoing reasons, Defendants' motion to exclude Mr. Greear's expert testimony will be denied.

### B. Motion to Exclude Testimony of James Sobek (Dkt. 75, 175)

Defendants also move to exclude the expert testimony of James Sobek concerning what Mr. Sherwood could see on the day of the accident because it "lack[s] the relevance and reliability requirements for admission under FRE 702." Dkt. 75-1 at 5.

With respect to relevance, Rule 702 "allows admission of scientific, technical or other specialized knowledge by a qualified expert if it will assist the trier of fact to understand the evidence or determine a fact in issue." *Mukhtar*, 299 F.3d at 1063. Defendants argue that Mr. Sobek's testimony is irrelevant because it only assists the jury in determining what is visible to someone analyzing after-the-fact photographs, not what Mr. Sherwood himself could see on the day of the accident. Dkt. 75-1 at 10. Defendants

characterize this as only "[Mr. Sobek's] own personal conclusions of what can or cannot be seen, and not the actual memory or testimony of Mr. Sherwood." *Id.*

Despite Defendants' arguments, the Court finds Mr. Sobek's testimony will be relevant to the trier of fact. As Plaintiffs correctly point out, there is a genuine dispute about whether the gap in BNSF's railroad crossing was conspicuous. Dkt. 102 at 10. Therefore, expert testimony about "how a person views a crossing" before riding on it, with an emphasis on "the effects that lighting and shadows may have on the ground's surface," are directly relevant to the dispute in this case, and helpful to the ultimate trier of fact. *Id.*; *see also* Dkt. 102-3 at 10-14. Because photos of the accident scene will be used at trial to show jurors what the Mr. Sherwood might have been able to see, it is relevant for an expert to explain why those photos should indicate that Mr. Sherwood either could, or could not, see the gap in the railroad crossing at the time of the accident.

Defendants also argue that Mr. Sobek's testimony is unreliable. Dkt. 75-1 at 11. Particularly, Defendants assert that Mr. Sobek's "methodology and evidence he used to form his opinion was distorted and flawed." *Id*. at 10. Defendants' motion points out that Mr. Sobek did not take the photographs himself and did not use any peer-reviewed or scientific methodology to come to his conclusions about the visibility of the gap in the railroad crossing. *Id*. Defendants raise several additional tests Mr. Sobek could have run, including analyzing Mr. Sherwood's bicycle riding habits, or performing an on-site measurement of "photometric contrast." *Id.* at 4-5. These alleged deficiencies can be

raised on cross examination, but do not invalidate Mr. Sobek's qualifications under Rule 702. *See Wells*, 879 F.3d at 933.

While Defendants' challenges to Mr. Sobek's qualifications are fodder for cross examination, the Court will not exclude his testimony on reliability grounds. As indicated above, testimony is admissible when an expert "observed the physical evidence and applied their scientific and engineering knowledge to reach certain conclusions." *Crouch*, 2016 WL 157464, at *4. Defendants argue that while "Mr. Sobek has extensive general experience and history with vision and conspicuity in other contexts and arenas, he has none regarding where a bicyclist would be looking and what a bicyclist would or would not see approaching a crossing." Dkt. 116 at 6. As it concluded with respect to Mr. Greear, however, the Court is not convinced Mr. Sobek must be a bicycle-specific expert to provide an expert opinion on what Mr. Sherwood should have been able to see when approaching the railroad crossing. Mr. Sobek's thirty years' experience as an accident reconstruction expert with emphasis on analysis of visibility during accidents is enough for him to assess the visibility of the crossing in this case. *See* Dkt. 102-1 at 2. The Defendants have not challenged what appear to the Court to be Mr. Sobek's considerable qualifications to testify as to accident reconstruction issues, particularly issues related to visibility. *See id.* The Court, therefore, finds that Mr. Sobek meets the standards for reliability as set forth in Rule 702 and *Daubert*.

For the foregoing reasons, Defendants' motion to exclude Mr. Sobek's expert opinion will be denied.

# ORDER

**IT IS ORDERED THAT:**

(1) Plaintiffs' Renewed Motion to Limit the Testimony of Timothy Arnold (Dkt. 162) is **GRANTED in part and DENIED in part** as explained above.

**(2)** Plaintiffs' Renewed Motion to Limit the Testimony of Cloie Johnson (Dkt. 163) is **GRANTED in part and DENIED in part** as explained above.

**(3)** Plaintiffs' Renewed Motion to Limit the Testimony of Dr. Ronald Klein (Dkt. 164) is **GRANTED.**

(4) Plaintiffs' Motion to Exclude the Timothy Arnold Video Recreations (Dkt. 167) is **GRANTED,** but may be shown to the jury as a demonstrative exhibit.

(5) Defendants' Renewed Motion to Exclude Medical Testimony from Danielle Justin and Michelle Farella (Dkt. 173) is **DEEMED MOOT.**

(6) Defendants' Renewed Motion to Exclude Testimony of Charles Greear (Dkt. 174) is **DENIED.**

(7) Defendants' Renewed Motion to Limit Testimony from James Sobek (Dkt. 175) is **DENIED.**

DATED: February 25, 2019

B. Lynn Winmill
U.S. District Court Judge