UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT WILLIAM SHERWOOD and PAMELA LOUISE SHERWOOD,<br><br>Plaintiffs,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation, dba The Burlington Northern and Santa Fe Railway Company, and JOHN DOES I through X,<br><br>Defendants. | Case No. 2:16-cv-00008-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S OMNIBUS MOTION IN LIMINE (DKT. 182)** |

## INTRODUCTION

Before the Court is Defendant BNSF Railway Company's Motion in Limine (Dkt. 182). This motion raises various issues, including plaintiff's intent to present evidence at trial of BNSF's alleged spoliation of evidence. Otherwise, BNSF's motion raises 15 discrete issues, some of which are directly or indirectly related to spoliation. As will be explained below, the Court is not inclined to impose discovery sanctions. Otherwise, the Court's rulings on the related 15 issues are set out below.

## BACKGROUND

On July 14, 2014 Plaintiff Robert Sherwood crashed while riding his bike over a BNSF railroad crossing on Schweitzer Mountain Road, just outside Sandpoint, Idaho. Mr. Sherwood alleges that his front tire lodged in a narrow gap between two cement panels on the crossing, which cause caused him to be thrown over his handlebars and onto the pavement.

Shortly after the accident, BNSF referred the matter to counsel in anticipation of a lawsuit. BNSF also inspected the crossing and documented the gap between the panels by taking photographs and measurements. A few weeks after that, BNSF closed the gap. Closing the gap may have involved lifting one panel, rotating it 180 degrees, and then setting it back down, although some BNSF employees remember just using pry bars to slide one panel next to the other, which closed the gap. *See BNSF Motion*, Dkt. 182, at 13. Plaintiff accuses BSNF of "secretly" closing the gap, as BNSF did not create or preserve any documentation of the repair. *See Response,* Dkt. 197, at 4.

BNSF also rehabilitated the crossing in November 2014. Counsel refers to this as a "routine rehabilitation," because it appears that, even before Mr. Sherwood's accident, the rehabilitation was scheduled for November 2014. The parties do not describe this rehabilitation in detail, but it involved repurposing some of the cement panels for use elsewhere, as well as replacing the ballast, ties, and lags. BNSF discarded the existing ballast, ties, and lags, which is the basis for plaintiff's spoliation argument. Plaintiff says these discarded items could have helped support his theory that the crossing was in a state of disrepair in July 2014.

BNSF admits that the ballast, ties, and lags were discarded but says there is nothing nefarious about this, particularly given that it had carefully documented the crossing as it existed in July 2014 by taking photographs and measurements of the crossing surface. Additionally, BNSF says it was eventually able to find at least one of the cement panels and plaintiff ultimately declined to inspect it.[1] *Motion*, Dkt. 182, at 8.

BNSF also says that even though within weeks of the accident, plaintiff had an attorney and had developed a theory that a gap in the crossing caused the accident, he did not ask BNSF about the possibility of physically inspecting the crossing in March 2015, when counsel sent an evidence-preservation letter. *Id.* at 7. Rather, BNSF says that at that time, plaintiff's counsel only asked about preserving *documentation* related to a physical separation in the crossing; BNSF was not asked to preserve any physical components or the condition of the crossing. *Id.*

Plaintiff responds that BNSF, with its sophisticated claims department and attorneys, should have known better, even without any request on his part, and therefore should not have discarded the ballast, lags, and ties. At a minimum, plaintiff says BNSF should have photographed and documented the November 2014 rehabilitation as well as the earlier repair that closed the gap between the cement panels.

Plaintiff has complained about spoliation earlier in this lawsuit. But he never filed

---

[1] Plaintiff explains that he declined to inspect any of the planks because "BNSF did not document, and does not know, the path that any of the four re-discovered planks took between they were removed from Schweitzer in November 2014 and when they were re-discovered in early 2017. *See Response*, Dkt. 197 at 7.

**MEMORANDUM DECISION AND ORDER - 3**

a motion for discovery sanctions, despite having filed other, successful discovery motions. *See, e.g., May 9, 2018 Order*, Dkt. 134 (granting plaintiff's motion to compel). Instead, he simply weaves the spoliation argument into various filings in this lawsuit. In the context of moving to add a claim for punitive damages, for example, plaintiff argued that "because of BNSF's spoliation of physical evidence, the jury should be entitled to draw adverse inferences as to the condition of the crossing at the time of the crash." *Oct. 17, 2019 Motion Mem.*, Dkt. 67-1, at 16. The Court declined to rule on the spoliation issue, pointing out that to seek a discovery sanction, plaintiff "*must do so* in a separate motion and with more context specific to the discovery process." *Sept. 28, 2018 Order*, Dkt. 152, at 10 (emphasis added).

Despite this direction from the Court, plaintiff still did not file a motion for discovery sanctions. Instead, Mr. Sherwood's trial submissions show that he has simply worked the spoliation issue into his trial strategy. He intends to present spoliation evidence (including, most significantly, BNSF' destruction of the crossing components in connection with the November 2014 rehabilitation), and he also intends to have a railroad expert (Alan Blackwell) testify as an evidence-preservation expert.[2] Mr. Sherwood further assumes that, after hearing all this evidence, the jury will get to decide whether BNSF spoliated evidence, and, if so, whether to infer that the discarded evidence was harmful to BNSF. *See Plaintiff's Proposed Jury Instruction No. 7*, Dkt. 172-1.

---

[2] The Court will resolve BNSF's motion to preclude Mr. Blackwell from testifying in a separate order. As will be explained there, Mr. Blackwell is not qualified to testify as an "evidence-preservation" expert.

# DISCUSSION

## A. Spoliation

Spoliation is a discovery offense, so issues surrounding alleged spoliation should be resolved during discovery – not on the eve of trial. Plaintiff's tactical choice of sliding an adverse-inference instruction into his stack of proposed jury instructions and otherwise waiting in the wings with planned spoliation evidence is disruptive, particularly when the Court had previously instructed plaintiff to raise spoliation in a discovery motion. For this reason alone, the Court could deny plaintiff's request for an adverse-inference instruction as untimely. *See generally Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494 (D. Md. 2009) (identifying factors courts consider in determining whether a spoliation motion is untimely; generally observing spoliation motions "should be filed as soon as reasonably possible after discovery of the facts that underline the motion"); *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06–cv–569, 2008 WL 2491747, at *2-3 (S.D. Ohio June 18, 2008) (spoliation motion filed one week before trial untimely). Nonetheless, in the interests of resolving this issue on the merits, the Court will consider the parties' substantive positions.

In general, litigants owe an "uncompromising duty to preserve" what they know or reasonably should know will be relevant evidence in a pending lawsuit, or one in the offing, even though no discovery request or order to preserve evidence has yet been made. *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998); *see generally Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). A party engages in spoliation as a matter of law if the party had some notice that the evidence was potentially relevant to litigation

before its destruction. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). A finding of bad faith is not required before a court may impose sanctions for spoliation. *Glover*, 6 F.3d at 1329.

A party seeking sanctions for spoliation thus bears the burden of establishing that the opposing party (1) destroyed relevant evidence and (2) had an obligation to preserve the evidence when it was destroyed or altered. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015). An obligation to preserve attaches when a party knows or should reasonably know that the evidence is potentially relevant to litigation. *See Kitsap Physicians Serv.*, 314 F.3d at 1001. Once such a showing is made, the district court has inherent discretionary authority to levy sanctions. *Glover*, 6 F.3d at 1329.

Here, the Court is not persuaded that BNSF spoliated evidence when it closed the gap in the weeks following the accident. BNSF photographed and measured the scene before closing the gap; the repair itself appears to have been minimal; and the individuals who participated in the repair were available to both sides for questioning. It also appears that no physical components of the crossing were destroyed in this repair. The Court will therefore decline to impose any discovery sanction based on BNSF's closing of the gap in the weeks following July 2014.

Similarly, the Court does not find that BNSF spoliated evidence in connection with the November 2014 rehabilitation. Plaintiff argues that if the condition of a railroad crossing is at issue in an anticipated lawsuit, and the railroad plans to extensively rehabilitate that crossing before the lawsuit can be resolved, then the railroad should know to preserve evidence of the condition of the crossing as it existed before the

rehabilitation. This would arguably include keeping the replaced ties, lags, and ballast and making them available to plaintiff for inspection. At a minimum, plaintiff says BNSF should have photographed the component parts as well as rehabilitation itself.

But it's easy to point out all these alleged failures with the benefit of hindsight. As BNSF points out, from its perspective, the November 2014 rehabilitation did not even become an issue until September 2016, when plaintiff's counsel asked to have one of his experts inspect the concrete planks. BNSF says it was ultimately able to find one of the two planks that formed the separation, but plaintiff declined to inspect that plank. Further, it bears repeating that BNSF carefully photographed and documented the existence of the gap on the surface of the crossing, and plaintiff's case is premised on the notion that the gap should not have been there. Under these circumstances, the Court does not find spoliation and therefore will not impose discovery sanctions.

**B.     Defendant's Separate Motions**

Having resolved the spoliation issue, the Court will turn to the remaining issues raised in BNSF's motion in limine.

**Motion No. 1:  Dr. Livingstone Disciplinary Action**

Defendants' unopposed request for "prohibiting and excluding any argument, examination or cross-examination, testimony or other evidence regarding any disciplinary action involving Dr. Edgar F. Livingstone, M.D.," *Motion*, Dkt. 182, at 1-2, will be granted.

**Motion Nos. 2-4: Subsequent Remedial Measures**

In motions 2, 3, and 4, Defendant raises issues related to the post-accident closing of the gap, as well as the November 2014 rehabilitation. The Court already addressed the spoliation issues related to these events. The next question is whether evidence of these events should be precluded under Federal Rule of Evidence 407, relating to subsequent remedial measures. This rule provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> • negligence;
> • culpable conduct;
> • a defect in a product or its design; or
> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407. "Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them." *Pau v. Yosemite Park & Curry Co.,* 928 F.2d 880, 888 (9th Cir. 1991).

BNSF's closing of the gap in the weeks following Mr. Sherwood's accident is a textbook example of a subsequent remedial measure under Rule 407. The Court will therefore grant BNSF's motion on this point. The Court will not permit evidence of that event to prove any of the items listed in Rule 407 (e.g., negligence). If, however, the ease of this repair is disputed during trial, the Court will allow plaintiff to present evidence of the closing to show whether it would have been feasible for BNSF to close the gap

earlier. *See Response,* Dkt. 197, at 4.

As for the November 2014 rehabilitation, plaintiff indicates that he will present evidence that track drainage problems develop gradually; that there was standing water in the crossing in November 2014 when it was opened up; and that this tends to show that BNSF did not design and maintain the crossing to provide for adequate drainage. *See Response*, Dkt. 197, at 5.

The Court agrees that the condition of the crossing in November – and particularly, the existence of standing water in the crossing – is relevant to the condition of the crossing in July. BNSF may argue that this evidence should be accorded little weight, but the Court will not exclude evidence of the routine rehabiliatation. The Court will therefore deny BNSF's motion to exclude evidence of the November rehabilitation, though it will consider issuing an appropriate limiting instruction.

**Motion No. 5: Post-Incident Investigation**

BNSF next requests an order excluding "any allegations, argument, evidence or testimony regarding any practices, customs or occurrences by BNSF which do not directly relate to the factual allegations giving rise to Plaintiff's complaint – including, specifically, BNSF's practice, custom and actual occurrence of conducting a post-incident investigation." *Motion Mem.*, Dkt. 182, at 15. at 15, Dkt. 182. Specifically, BNSF is concerned that Plaintiffs will "attack BNSF's inspection procedures, practices, and the actual acts (or omissions) of the inspection . . .." *Id.*

It appears that this argument is connected to the spoliation issue, which the Court has already resolved. As noted above, the Court has not been persuaded to issue

discovery sanctions related to post-accident events at the crossing. Otherwise, to the extent plaintiff intends to present evidence regarding post-accident investigations, the Court will resolve such objections as they arise in the course of trial.

**Motion No. 6: Previously Undisclosed Evidence, Opinions, or Witnesses**

On February 4, 2019, the day before all exhibits lists and other pre-trial filings were due, BNSF received a supplemental report from one of plaintiff's experts, Dr. Lobatz. BNSF says it has not yet had a chance to dig into this supplemental report, but says that "if any of this is new, it is untimely and prejudicial . . . ." *Motion,* Dkt. 182, at 18. Plaintiff responds that because Mr. Sherwood regularly switches medical providers and tries new mediations and therapies, supplementing Dr. Lobatz's report was appropriate.

The Court will rule on this objection in the context of trial, given that the parties are mainly speaking in generalities at this point. The Court will observe, however, that Rule 26(e) is not an excuse for an expert to rewrite opinions or to present new opinions.

**Motion No. 7: Other Bicycle Crashes and Injuries at Railroad Crossings**

BNSF asks the Court to "enter an Order prohibiting and excluding argument, testimony or evidence of any other bicycle or wheeled conveyance crashes and/or injuries at railroad crossings without a sufficient showing of substantial similarity, proximity in time, and relevance." *Motion,* Dkt. 182, at 18. It appears that the parties agree on the threshold standard related to whether evidence of other bicycle accidents are admissible. The Court will therefore reserve ruling on any objections related to other bicycle accidents until trial.

**Motion No. 8: References to "These Accidents"**

Defendant asks the Court to prohibit any statement in the course of trial that uses the plural form of accident ("these accidents" or "these crossing accidents"). *Motion*, Dkt. 182, at 18-19. The Court will deny this motion – it will not place such a broad restraint in advance of trial. Nevertheless, and as with all motions in limine, defendant is free to raise the objection again during trial. The Court may reconsider its position in the context of trial, depending on how the evidence unfolds.

**Motion No. 9: Discovery Disputes**

BNSF seeks to exclude references to discovery disputes. Generally speaking, the Court agrees. Unless there is some exceptional circumstance, discovery disputes should not be raised during trial. The Court will grant the motion.

**Motion No. 10: Scope of Experts' Testimony**

BNSF next seeks a broad order "prohibiting Plaintiff's liability experts and/or expert economist from rendering any type of opinion regarding medical causation and/or mechanism of injury and/or the nature, degree and extent of injury alleged by Plaintiff – as none of these experts are qualified to render such opinions." *Motion,* Dkt. 182, at 19. The Court declines to rule on such a broad request. The Court has already reviewed and ruled on numerous *Daubert* issues.

**Motion No. 11: BNSF General Disregard for General Public Safety**

BNSF asks the Court to prohibit Mr. Sherwood from implying that BNSF is "a big corporation that disregards the general public or its safety." *Id.* at 19-20. Defendants argue that "BNSF cannot be held liable for disregard of a general risk to the public, it

must be liable for a specific duty to Mr. Sherwood." *Def.'s Reply* at 3, Dkt. 201 Generally speaking, the Court agrees that plaintiff should restrict himself to the events occurring in this matter. Nevertheless, the Court will reserve ruling on objections of this nature until trial.

**Motion No. 12: References to Witnesses Not Called**

BNSF asks the Court to prohibit plaintiff from referring to witnesses that were not called. Plaintiff, however, argues that, "[d]epending on how the evidence at trial unfolds, it may be proper for Mr. Sherwood to comment on – and even obtain an instruction on – BNSF's failure to call certain witnesses under its control (e.g. its employees)." *Response,* Dkt. 197, at 15. Again, the Court prefers to rule on such an objection in the context of trial.

**Motion Nos. 13-14: Motions in Limine and Settlement**

The Court will grant BNSF's unopposed request or an in limine order preventing the parties from raising in limine motions or settlement negotiations during trial.

**Motion No. 15: Any Reference or "Attack" on the Attorneys (No. 15)**

Finally, BNSF asks the Court to enter an order prohibiting "*any reference to* or attack against my party's attorney." *Motion*, Dkt. 182, at 20 (emphasis added). Obviously, the Court agrees with BNSF that both parties and their attorneys have a responsibility and a duty of fairness and civility. *See* Dist. Idaho Loc. Civ. R. 83.8. But the Court finds it overinclusive to prohibit "any reference to" the attorneys in this case. The motion will therefore be granted in part and denied in part.

## ORDER

**IT IS ORDERED that** Defendants' Motion in Limine (Dkt. 182) is GRANTED in part and DENIED in part as explained above.

DATED: March 1, 2019

B. Lynn Winmill
U.S. District Court Judge